morning your honors and may it please the court Matt McGuire on behalf of the Commonwealth the district court erred in this case by finding that a provision of the bankruptcy code preempted a validly issued state law order to withhold funds for unpaid child support had been directed to a chapter 13 trustee in a bankruptcy case with an unconfirmed plan that had been dismissed three points we believe demonstrate why there is no preemption here that the district court's judgment should be reversed first absent the bankruptcy codes automatic stay provisions the Commonwealth has the undisputed right to serve orders to withhold on debtors as well as debtors of the debtor such as a bank or employer second because the automatic stay provision terminates as soon as a bankruptcy case is dismissed the trustee was nothing more than that a debtor of the debtor in this case when the Commonwealth served the order to withhold on him the statute seems applicable here 1326 says if a plan is not confirmed trustee shall return any such payments not previously paid to the debtor any deductions are not applicable here that's the plain lines of the statute doesn't that settle this case so your honor there are two responses to that first is that the Supreme Court has said in Harris and Jevic that when you're interpreting the bankruptcy code you look beyond just the initial provision to determine the plain meaning you have to look to the code as a whole and then that leads to my second response that leads to my second response Judge Agee which is that whether or not a plan is confirmed or unconfirmed is separate and distinct from whether the case is dismissed or continues in this case demonstrates why that's true as a factual matter there are multiple unconfirmed plans in this case and under 1326 a2 there may be an argument that a debtor can make that the trustee is obligated under 1326 a2 to return the funds at each instance when the plan is unconfirmed but when a plan is unconfirmed it doesn't necessarily mean that the case is dismissed and in fact as we pointed out in our brief the principal concern that 1326 a2 is after is what does the trustee do with funds when you have an unconfirmed plan when you have a confirmed plan the trustee is directed to pay them out that she tells the trustee what to do what that's right your honor because there was concerned that the trustee you see this a little bit in the Harris case would be paying out funds under unconfirmed plans to creditors and the instruction is no once the plan is unconfirmed chapter 7 that's so we don't we don't have that in this case what we have is a federal statute that tells a federally created officer what to do in a specific circumstance and it says send the money back to the debtor. Bankruptcy is not a common law proceeding it's a purely statutory proceedings created by Congress. Congress sets the rules which you can set within the parameters however it wants. In this case it says send the money to the debtor. Your honor I think you're exactly right it is a statutory created entity and our position here is you do have to look to what Congress intended and the problem with the trustees argument in this case is that there is no bankruptcy case once it's dismissed it is over the automatic stay provisions are gone which is the hallmark of bankruptcy in the first place which is that creditors can't come in and levy the bankruptcy estate during the pendency of the case and so we prove automatic stay provision does govern the timing of what happens once the bankruptcy case is no longer exited. But in this case you have a statute that directs not timing but to whom funds that are in the bankruptcy estate. Your honor it's talking about what happens while there is a pending bankruptcy case and if you look at the second part of the clause in 1326a2 the except for 503B claims that have been approved I helped highlight that because those claims can only arise in the context of a pending bankruptcy case you have to apply for that claim you have to have a notice of hearing and then it can be approved and so it's all wrapped up inside the bankruptcy case 1326a2 presupposes that there is one ongoing. This is an anomalous case in the sense that as we put out in our reply brief statistically you don't have as that many that are dismissed unconfirmed and there's no reason necessarily in this case that it had to happen at the same time. You just have a situation where the bankruptcy case is over there is no signal from Congress that they intended for the automatic stay provisions to continue to cover the debtors funds once they're in possession of the trustee after the bankruptcy case. It's just an instruction to the trustee about what you do with funds that you're holding that can get inherits when it's converted after 7 for example it sets the default rule inside bankruptcy for It actually picks up on a unique feature of chapter 13 itself which is that post petition income is part of the bankruptcy estate in any way. It's not in chapter 7 and that's sort of the distinguishing feature about Harris where the reason it goes back to the debtors because that would have never been included in the bankruptcy estate in the first place because when you convert to chapter 7 it's treated as if it started on the same day the chapter 13 petition was filed. So that sort of explains the outcome in Harris and a further point on this as we pointed out in our reply brief both Javik Harris all of the cases cited by the trustee involve ongoing bankruptcy proceedings. They don't have a single case in which the bankruptcy proceeding is over the automatic stay is terminated and they're still holding the money what you do then. I did pick up a sense from one of Judge Agee's questions about potential concern with this the Barton doctrine idea of suing the trustee and I do want to touch on that because that's not what's at issue here in this court's McDaniel case there was an actual lawsuit filed against the trustees there. There's no such lawsuit here it's an order to withhold that the Commonwealth has the right to serve under Virginia law and then there would have to be a separate judicial suit if we ever tried to enforce that against the non-compliant trustee in that context the Barton doctrine may very well apply but not on the front end. And another point I think is important to respond to is the idea that the trustee is subject to personal liability for the full $80,000 at issue here. The way the trustees in their brief they ellipses out the intent portion of that Virginia code section. It isn't strict liability if you choose not to comply with the order to withhold. You have to make that decision to or for the benefit of the debtor. It implies some sort of intent to help the debtor avoid their obligations not just strict liability you didn't apply so you're on the hook for the full amount. So you mean that the federal statute would give the trustee a defense? Your Honor. Is that what you suggest? I'm suggesting that if the trustee expressed concern that he would be liable for that. But isn't that the ultimate where you go? Well You're saying that the Bankruptcy Code provision that seems to expressly speak to this situation actually only gives the trustee a defense against a state law claim. It's possible, Judge Mott. So before this Court resolves the issue say here the money had been returned to Mr. Webb it might very well be a defense in that instance where if the Court comes back and says we're right what's really critical is whether or not there's an ongoing bankruptcy case. And we really do think this is an important distinction. And I know it looks at the case at a very high level but the Bankruptcy Code is an entire package. Titles 1, 3, and 5 apply to all provisions. And the automatic stay comes from Title 3. And it says explicitly that the dismissal, the stay terminates at the earlier of the case is closed or the dismissal of the case in the third provision that's not relevant here. And so under the Bankruptcy Code itself this case ended the minute the dismissal order was entered. And I think it's important to note that under the Bankruptcy Code itself the trustee is to return the funds to the debtor. Your Honor, again it's in the confines of the bankruptcy case. And I really do want to harp on this point and try to make it clear. I know maybe I'm not being super clear about this, but you have multiple unconfirmed plans in the case. Isn't there some sort of argument under 362 that that's an implied repeal of 1326? No, Your Honor. I think 1326A2 has all sorts of meaning inside the confines of the unconfirmed plan conversion. And as I say, there could be an argument in a future case where the debtor could come forward and say the bankruptcy trustee should have returned my money when my plan was unconfirmed. Because there could be a gap. Like I said, there's no requirement that the case be dismissed the moment a plan is not confirmed. You saw it here. There were, I believe, three attempts to confirm a plan that were denied before eventually the case was voluntarily dismissed in February of 2017. And I think the debtor would have an argument under the statute as written that at each instance the plan was unconfirmed, the money should be returned to them. They have never asserted that right. It doesn't make a lot of sense why you would if you intend to file another plan and keep a bankruptcy case going. But there could always be a gap in what time. Mr. LaGuardia, are you saying that the timing of the dismissal is what matters here? If the money has been returned before the dismissal, that that would make a difference? Yes, Your Honor. I think it makes all of the difference. So here, say the final plan was not confirmed on February the 7th. And immediately the trustee, knowing that the debtor was not going to file another one to return the funds, and it wasn't dismissed until the 9th, we wouldn't be able to serve in order to withhold on the 7th because the automatic stay would be in place. We would be subject to liability under 362K for violating the automatic stay. I mean, you see this... I'm sorry, but can you one more time tell me why the language in 1326, which says the plan is not confirmed, the trustee shall return any such payment to the debtor. Why that doesn't control the case? Your Honor, I think it is – I'll take one step back to try again. Sure. I need all the help I can get. Under 28 U.S.C. 959, the trustee is instructed to take – that they are to possess funds in accordance with State law, just like the owner would. So that's the background principle. That changes once you enter into a bankruptcy case because of the inability to levy against the bankruptcy estate. And so that's why we think it makes all of the difference whether the case is pending. What 1326A2 is principally concerned about is the payment of creditors under non-confirmed plans. Congress was making sure that the trustee knew that the obligation was to make payments consistent with a confirmed plan, but not to pay creditors out of the debtor's assets from an unconfirmed plan. I mean, again, these – when you're in bankruptcy, these individuals... ...specific exemptions and the portion of the statute immediately following the language that we've been reading that sets out specific instances where Congress says, Chapter 13, trustee, you are to nonetheless pay these amounts. So Congress clearly knows how to write an exception to that rule if it chooses. Judge Agee, you're exactly right, but there are exceptions to the ability to make this as a solid entity until such time as you have a plan confirmed to pay creditors. It's an exception to that. Otherwise, the trustee would not be able to make any payments at all out of the bankruptcy estate unless you had a confirmed plan. So it's giving you an exception which you would not otherwise be able to make. Those payments wouldn't exist. So it actually, I think, supports our argument that all of this is happening in the confines of the bankruptcy case itself because they are simply two fundamentally different things between plan confirmation or not and whether or not the case is exited or not. And so because the trustee, to return Judge Motz to try to finish my answer, because the trustee has the duty to comply with state law just like the owner, that's why when there's no bankruptcy case pending, they have to comply with the order to withhold. Because there's no dispute here that on the day, I don't think there's any dispute here, that if Mr. Webb had possessed this $3,000 himself on the day the case was dismissed, we would have been able to serve an order to withhold immediately on him. And since the trustee has the same obligations in the absence of a bankruptcy case, that would seem to control here. And I do think it's important for me to highlight at least one policy point. It's important to the Commonwealth because if money is returned to the debtor and it's a promptly cashed, we won't be able to access it. And this person here, we believe, is absconded to England. And so this is a continuous problem for the Commonwealth, a very limited subset of cases in which it's a burden that is presupposed by the amicus brief and by their response brief just is not likely to arise here. And so from the Commonwealth's position, the critical fact in this case is... How many bankruptcy cases have you handled? None, Your Honor. This is my first one. But the idea of... I've done it for years and I can tell you, the races are on. Well, my understanding here, Judge Agee, is that the time between dismissal and when this case would be closed is a couple of weeks at the most. Again, it's interesting that this issue has never arisen before. It appears to be an issue of first impression for this Court. The closest analogous case that I'm aware of is from the First Circuit's Bankruptcy Appellate Panel, which agreed with our reading of the statute that what's critical here is the presence of the bankruptcy case itself. Otherwise, you don't have an estate. Otherwise, it's just funds of the debtor that can be levied against by anybody who can find it. And that is really the situation. And I fully take Your Honor's point. This is a congressionally created scheme. And I do think it's important for the Court to appreciate the distinction between the bankruptcy case itself and what happens within the confines of the case, which is planned confirmation. Unless the Court has further questions, I will take a step back. Thank you. Good morning. My name is Angela Scolfuro. I am the staff attorney for Herb Weston District of Virginia. Thank you for the opportunity for oral argument today. I have four reasons I'm going to ask you to affirm the District Court opinion. I'd like to point out the description of the case on your docket today says that the funds that were returned were a return of child support payments. I think that may be a typo on your description. The funds that the debtor was paying in on a monthly basis under the terms of his proposed plan. Those are the funds that we're holding. They've never been There are tens of thousands of dollars in debt that he owes, right? I'm sorry? There are tens of thousands of dollars in debt that he owes to various creditors. Many. Eighty thousand just to the division. Many, many tens of thousands of debt, yes. The first thing I'd like to point out is, as you've mentioned, the funds to the debtor, that is mandatory. There's no discretion in trustee. Congress enacted the code to balance rights of creditors and debtors. Sometimes it favors creditors. Sometimes it favors debtors. As Judge Agee pointed out, Congress sets the scheme. It says, at dismissal, funds go to the debtor. That's the same similar language that the Supreme Court was In Harris, the Supreme Court never mentioned the automatic stay. The department makes a big deal that in Harris, the automatic stay was in place because he was converting from 13 to 7. It's true. The automatic stay was in place, but the Supreme Court never mentioned it. I don't think it is relevant in this case. I don't think it was relevant in that case. In that case, the Supreme Court said Ms. Galforo, I think you said that the statute said that at dismissal, funds go to the debtor. Yes. That's not what the statute says. It says the plan is not confirmed. Yes. And that's what this is all about, right? Yeah. So if you look at 1326A2, it begins by saying the trustee shall retain the funds until confirmation or denial of confirmation. And I think it's a practical issue that the court almost never denies confirmation. In the 13 years I've done this job, I can only think of twice the judge has ever denied confirmation. What happens most of the time, which is what happened in this case on the docket, is there are four confirmation hearings. Confirmation is before the court. The court never rules on confirmation. The court didn't confirm a plan either. So the beginning of 1326 says trustee holds the funds until confirmation or denial of confirmation. We never got there. In many cases that get dismissed, most, we never get there. In this case, the dismissal order doesn't address confirmation. It didn't deny confirmation. It just dismissed. So I think that's why the later sentence in 1326A2 is a little more broad. It says if a plan is not confirmed, then return the money to the debtor. Because it has to incorporate when confirmation is denied and also when there's dismissal without any confirmation at all and no plan ever got confirmed. What happens in 13 is, I mean, the debtor's going to know, the debtor's attorney's going to know, this plan isn't going to be confirmed. They're going to be self-evident whether the debtor can afford to make the proposed claimants. And so they're going to submit a modified plan if they can. And if they can't, they're probably going to convert to Senate. I mean, isn't that about 99.9% of the cases? Yes. Either they're going to present more evidence to convince our office and the judge that this is the plan that can be confirmed, or they're going to amend the plan and try again something else. Which is what they did here, apparently. It's exactly what they did here. You'll see in the record, we file a trustee's report that says we need these additional documents to convince us this plan works. The trustee's report in this record shows the documents we wanted to look at to try to evaluate. In this case, they attempted to try to do some plans. It didn't work. As you say, they saw the writing on the wall and agreed to the dismissal at the fourth hearing. So that's what happens most of the time. We never get this scenario where there's this denial of confirmation and then I have to give the funds back right away. We don't get a denial of confirmation. We just get no substantive ruling, court hearing continued again and again. So I think this idea that it's going to happen, the first part of the statute says I have to hold the funds until confirmation or denial of confirmation. That's what we're going to do. And we're going to wait. But the second sentence in 1326 is more broad. So if it never gets confirmed, give the money back to the debtor. And that's what happened here. It never got confirmed, never got denial of confirmation. But at dismissal, we give the money back to the debtor. And that's what happened here. I would also point out, I would like to highlight the importance of this issue for the trustee's office. You saw the amicus brief signed by every chapter 13 in the entire circuit. Because this is of concern to the trustee's office. The trustee, as Judge Agee pointed out, is a creature of statute. He's not a corporation. He's not a bank. He is an individual appointed individually to perform the duties under the statute in 1302 and the entire code. He has personal liability. The 23 chapter 13 trustees in this In our office, Mr. Beskin disperses more than $2.4 million every month in more than 4,400 open cases. We are concerned about the race to the trustee. Judge Connolly was concerned in the bankruptcy court opinion. Judge Moon was concerned about it in the district court opinion. The order to withhold. I'm sorry. How do you distinguish the cases that have gone the other way? Well, I mean, the big way I would distinguish is that all but three of them were entered before we have the benefit of Harris v. Vigeland and Suzuki v. Jevick-Holding. I mean, in those two cases, which were just 2015 and 2017, the Supreme Court reiterates again what I call my six points. Debtor's fresh start, very important. It is a wholly, 13 in That matters. They come in, they're trying to do their best, cut them more slack. Chapter 13 should benefit debtors and creditors, not just debt creditors. The importance of restoring the debtor to the pre-petition financial status quo. Supreme Court talked about that in Harris and Suzuki. That was important. Put them back how they were before the case was filed. That there's no code provision that classifies property as belonging to the creditor. The creditor doesn't have a right to any of the property. He just has what the code provides. And the Supreme Court wasn't concerned at all about this argument that there would be a windfall by giving this money back to the debtor. That's the concern, right? I mean, it was $80,000 in child support. We don't want to hand him $3,000. But the Supreme Court in Harris addressed head on. The Fifth Circuit based part of its ruling on its concern about this windfall of giving this debtor back money. But the Supreme Court said we're not worried about the windfall at all. It's not of concern to us. Because of these reasons. Because coming into 13 is voluntary. Because it should benefit both. Because we have to put him back the way he was. Because the statute says what to do. In Harris, 348F says this post-petition wages is not property of the converted seven estate. It's what Congress said. It's not. So they don't go to the creditor. They go back to the debtor. Even though there are a lot of creditors that would like it. In this case, 1326 says when it's over, give the money back to the debtor. That's what the statute says. That's the balance Congress made. So that's what the bankruptcy court said and the district court said and what we're asking. 1326 addresses. And the department wants to say there's no case anymore. It's done. Once it's dismissed, there's no case. Well, then, why would 1326 tell me what to do when no plan ever gets confirmed? If a plan isn't confirmed, the case is over. I mean, if a court actually ruled on confirmation and denied confirmation, the court enters an order to dismiss. Or the court enters an order to amend the plan under the 1326A3. That's what's going to happen. And if that doesn't happen, that's when 1326 says, trustee, give the funds to the debtor. That's the allocation Congress made. And I think the Supreme Court in Harris and Suzuki really emphasized voluntary nature, look to the statute, do what it said. So they make much, of course, of the automatic stay provision and its expiration. So how do you see that weaving into this? My opinion is it doesn't matter. I mean, I agree. The moment the dismissal order got entered, there is no automatic stay. So that means there's no automatic stay. It doesn't tell me what to do with these funds I'm holding. 1326 tells me what to do with these funds I'm holding. I mean, just like in Harris, the fact that there was an automatic stay, the Supreme Court did not say there's an automatic stay, so nobody can go after this funds. There's an automatic stay, so the debtor gets the funds. No, they said 348F says these aren't property, the seven estate, so the debtor gets them. Similar here. I mean, I don't think it matters that there's no stay. I agree with the department that once the case is dismissed and there's no stay, they can pursue the many remedies they have. They could have garnished the debtor. They could have garnished the debtor's employer. They could have sought to have the debtor jailed. This money is so defaulted. There are things the department can do because there's no automatic stay. Do you agree with the way Judge Moon's opinion answers Judge Motz's question on 362, which is 362 simply designates the timing of when the trustee can make a payment. It doesn't designate who receives the funds. Yes. And the point, and I think his point, which goes to this absurd result argument, is once the stay is lifted, once the case is dismissed, that's the timing. That's when the trustee cuts the check and gives it back to the debtor. And the who of who we cut the check to, I mean, that's the trustee's dilemma. Who do we cut the check to? Do we cut the check to the debtor under 1326, or do we cut the check to the commissioner under the state statute? Who do we cut the check to? And so his point is 1326 tells us who. It tells us the debtor. And then the automatic stay just says when. When the case is dismissed and it's over, that's when you cut the check to the debtor. I mean, this issue of to whom you cut the check and the personal liability is of concern to the trustee. So the department says, well, cut the check to us, and we'll, in their brief below, and they said we'll hold you harmless. Well, too late then. Or they say, in the lower course, they said they would hold us harmless. Under the Virginia Code section, they'll hold us harmless if we give it to the debtor and we shouldn't have. Or if we give it to them and we shouldn't have. Or their argument in their reply brief. So after we give the money to the debtor, and after they sue the trustee, and after they try to hold him liable, well, then we may need to invoke the Barton Doctrine and get the Bankruptcy Court's permission. Well, Mr. Beskin and all 23 trustees really don't want that liability. I mean, it's too big a risk. And not just in this case, but all the creditors in 4,400 active cases. I mean, the trustee needs to know what we do with the funds. When this happens, this is what happens. And we have always thought it was very clear we give the funds back to the debtor. I mean, I So what happens in a situation like you had in the Ninth Circuit where you get, the trustee gets the garnishment from the Division of Child Enforcement on Monday, while on Tuesday the Internal Revenue Service files a tax lien like they did in that Bean case. Then what happens? And on Wednesday, Citi Financial issues us a garnishment out of their state court action. Then the trustee's really scrambling to figure out, who are we paying? And I'll tell you what the trustee's going to do. We're going to file a motion in front of the bankruptcy judge and say, who are we paying, Your Honor? And then somebody's going to be figuring out, is this preempted by the Supremacy Clause? It's the IRS. There's no Supremacy Clause. Well, but whose was first? Does that matter? I mean, those are the arguments somebody's going to have to figure out and look at. And we're going to file the motion and ask Judge Conley, and then she's going to have to tell us. I mean, I think it is a much simpler course. The Department says this hasn't really come up. Well, I can assure you people have called about garnishing us, and we've suggested that we're not really subject to that. We usually dismiss. We disperse once a month, so usually the money's gone before they're calling us often. Sometimes the debtor will ask, cut the check to somebody. We can't even do that. Our position has always been, 1326 says, when it's dismissed, we have to cut the check to the debtor. And our auditors are going to ask us why we didn't if we didn't. So when it's dismissed, we cut the check to the debtor. I mean, in the Shields case, quoted quite a bit by the Department, in that case, the bankruptcy court really struggled, and a lot of language the Department thought was helpful. But at the end of that case, the bankruptcy court said, cut the check to the debtor, but then send it over to the state court, and the state court can figure out if they're going to force the debtor to endorse the check over or not. I mean, so it wasn't that clear even to that judge what exactly they said. It says when you don't hold the money until you get confirmation or denial of confirmation. That doesn't happen, which it didn't, if the case is dismissed. 1326, broader language, plan didn't get confirmed, give the money back to the debtor. That's been our practice. That's what the two lower courts said. That's what we're asking you to rule in today's case. Thank you very much. Thank you, Your Honors. Mr. McGuire, you have a rebuttal? Thank you, Your Honors. Several points that I would like to make. The first of which is, the trustee represented in this court that plan confirmation doesn't, there's no denial of plan confirmation. Cases just end up being dismissed or not. It's been represented to me that it happens all of the time in other courts, where courts would deny plan confirmation and give somebody another 21 days to amend. So the practice before one trustee, which I don't think is in the record, is indicative of the practice writ large and shouldn't really control the outcome of this case. My second point, Judge Agee, to kind of where we started this morning about how to interpret 1326A2, is to pick up on a quote from Brown and Williamson that we cited in our brief at page 132. Reviewing court should not confine itself to examining a particular provision in isolation. The meaning or ambiguity of certain words or phrases may only become evident when placed in context. And we think context is absolutely critical in this case. There was a lot of discussion with the trustees' argument of Harris and Jevick and having, the U.S. Supreme Court having made clear how this should work. And those cases, and having how the court hadn't addressed the automatic stay provisions at all, there's no reason for them to address the automatic stay provisions. The bankruptcy cases were ongoing. They applied per force. It didn't matter. The automatic stay doesn't terminate when you convert a plan in Harris. And in Jevick, the conversation was about something else entirely. So it just doesn't come up in that context. The other point I wanted to make is the argument from the trustee that the goal of bankruptcy provision, which we agree with, is to put everybody back in the status quo before the case was filed. The problem here is that he would have, the debtor would not have had this money free from garnishment but for the fact that he filed Chapter 13. The idea that he could have accrued $3,000 without having been levied by the division or some other party. If the case wasn't pending, we could have levied him. So giving him $3,000 at the end of the case is just to award a windfall to somebody who hasn't been paying their debts and has accrued an enormous amount of back-due child support. And the last point I sort of want to make is that if the court adopts the reasoning of the trustee, it will create at least implicitly a split of reasoning between the Ninth Circuit, the First Circuit's bankruptcy appellate panel, and this court. Both of those courts have adopted reasoning far more like our articulation that what's critical is the fact that the bankruptcy case is ongoing. And during the trustee's argument, I continuously heard the blending of the words dismissal and plan confirmation. They are not the same thing. I think if the court looks at all the bankruptcy cases around this circuit... Your opposing counsel made a real distinction between them. I heard her argument differently. Well, Judge Watts, what I heard is that once the dismissal, at the time of the dismissal, the plan confirmation is a completely different concept than dismissal. No. The language is if a plan is not confirmed. Or if a plan is confirmed. The language in the sentence that you're talking about here is if a plan is not confirmed. And that was her whole point. That's right, Your Honor, but it's not if the case has been dismissed, do X. It's just if a plan is not confirmed. Well, if it's dismissed, it hasn't been confirmed. It doesn't say that the plan is not confirmed. And not if it's dismissed because it isn't confirmed. It doesn't say that. It's not confirmed. Your Honor, but there's not a bankruptcy case pending. I understand your argument, but I just thought that that point that you made was something that she specifically seemed to me addressed in the plan explanation. And maybe I heard it differently, Judge Watts. I will take the point. But our conception of this case is if the court adopts the trustee's reasoning, the court is extending far more protection to the debtor and treating the trustee differently than it ordinarily would under state law in the absence of any bankruptcy case. Once the case is dismissed, nothing in Title 11 of the United States Code applies from our view. And that's why the lawsuit here should be controlled by Virginia state law. Thank you very much. We will ask our clerk to adjourn court and then come down and greet the
judges: Diana Gribbon Motz, G. Steven Agee, Albert Diaz